**LYNCH CARPENTER, LLP**
Matthew J. Zevin (CA 170736)
mattz@lcllp.com
Todd D. Carpenter (CA 234464)
todd@lcllp.com
Connor J. Porzio (CA 351998)
connor@lcllp.com
1234 Camino Del Mar
Del Mar, California 92014
Telephone:    (619) 762-1900
Facsimile:    (858) 313-1850

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NATASHA FRENCH and CHANG CHO, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>BANANA REPUBLIC, LLC, a California limited liability company, BANANA REPUBLIC (APPAREL) LLC, a California limited liability company, and DOES 1-50, inclusive,<br><br>           Defendants. | Case No.: 3:24-cv-05216-VC<br><br>**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]**<br><br>Dept: Courtroom 4<br>Judge: Hon. Vince Chhabria |

Plaintiffs Natasha French and Chang Cho (collectively, "Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Defendants Banana Republic, LLC and Banana Republic (Apparel) LLC (collectively, "Banana Republic" or "Defendants") and state:

## I.     NATURE OF ACTION

1.     "Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society." *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971). This principle is as true today as it was over 50 years ago when it was penned by Justice Mosk writing for a unanimous California Supreme Court. This putative class action is about holding a multimillion-dollar company accountable to its customers who have been deceived by a years-long campaign to trick them into paying more for Banana Republic Factory's fashion merchandise through the widespread and perpetual use of false reference and discount pricing. "In short, the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." Staelin et al., *Competition and the Regulation of Fictitious Pricing*, 87 J. Mktg., 826, 835 (2023).

2.     Prices reflect a perceived value to consumers.[1] False advertising of prices can be used to manipulate consumers' value perception of products and cause consumers to overpay for them. Aware of the intertwined connection between consumers' buying decision processes and price, retailers like Defendants lure consumers with advertised discounts that promise huge savings and high value. But the promised savings are false, and the product's value reflected in its price is incorrect when the retailer advertises discounts off of some higher, made-up, and artificially inflated "original" price that no one ever pays.

3.     At all relevant times, Defendants have continually advertised false price discounts for merchandise sold throughout their Banana Republic Factory stores. In bringing this putative

---

[1] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (1992) [hereinafter Grewal & Compeau, *Comparative Price Advertising*] ("[P]rice is materially utilized in the formation of perceptions of the product's value and influences the decision to purchase the product or to continue to search for a lower price."); Patrick J. Kaufmann et al., *Deception in Retailer High-Low Pricing: A "Rule of Reason" Approach*, 70 J. Retailing 115, 118 (1994) ("[R]eference to a retailer's normal or regular price in retail sale price advertising provides the consumer with information used to determine perceived value").

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

class action complaint, Plaintiffs seek to remedy this deception and its attendant harm to consumers. Plaintiffs seek monetary damages, restitution, and declaratory and injunctive relief from Defendants arising from their false discounting scheme on apparel, accessories, shoes, and other items sold in their Banana Republic Factory stores and their e-commerce website, bananarepublicfactory.gapfactory.com.[2]

4.     False reference pricing occurs when a seller fabricates a false "original" price for a product and then offers that product at a substantially lower price under the guise of a discount. The resulting artificial price disparity misleads consumers into believing the product they are buying has a higher market value, and it induces them into purchasing the product. This practice artificially inflates the market price for these products by raising consumers' internal reference price and in turn the perceived value consumers ascribe to these products (i.e., demand).[3] Consequently, false reference pricing schemes enable retailers, like Defendants, to sell products above their true market price and value, leaving consumers to pay the inflated price regardless of what they thought of the purported discount. Consumers are thus damaged not only by not receiving the promised discount, but by paying a premium the products would not have commanded but for the false reference pricing scheme.

5.     The following example of a hypothetical DVD seller, which parallels Defendants' practice, illustrates how false reference pricing schemes harm consumers: the seller knows it can sell a particular DVD at $5.00, which represents both the market price and the price at which the seller could regularly make a profit. Instead, however, the seller creates a fake "original" price for the DVD of $100.00 and advertises the DVD as "on sale" at 90% off, creating a (fake) "sale" price of $10.00. Consumers purchase the DVD for $10.00 believing they got a "good deal" since it was

---

[2] Plaintiffs are informed and believe and thereon allege that both Defendants are subsidiaries of Gap, Inc. Both Banana Republic Factory and Gap Factory share a common website in which shoppers can click to toggle between Gap Factory and Banana Republic Factory e-commerce stores. As of July 16, 2024, a website user entering the URL bananarepublicfactory.com will be automatically rerouted to bananarepublicfactory.gapfactory.com. Throughout this complaint, bananarepublicfactory.com and bananarepublicfactory.gapfactory.com are used interchangeably and both refer to the Banana Republic Factory online e-commerce store.

[3] Grewal & Compeau, *Comparative Price Advertising*, *supra* n.1, at 55 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product.").

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

previously sold—i.e., valued by others in the market—at an "original" price of $100.00, and presumably would be again soon.

6.      The consumer's presumption and purchase stem directly from the seller's deception. If the seller did not employ a false referencing pricing scheme, it would not be able to sell many, if any, DVDs at $10.00 because the true market value of the DVD is $5.00. However, the false reference pricing scheme enables the seller to fabricate an increase in consumer demand for the DVD through the reasonable, but incorrect, *perceived value* of the DVD ($100.00) in connection with the substantial discount of $90.00. The net effect of myriad consumers' increased willingness to pay $10.00 for the DVD. Thus  the seller artificially inflates the market price for the DVD to $10.00 by advertising the false "original" price and corresponding fake discount.

7.      Through their false and misleading marketing, advertising, and pricing scheme alleged herein, Defendants violated, and continue to violate, California and federal law. Specifically, Defendants violated and continue to violate: California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* (the "FAL"); California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq* (the "CLRA").; and the Federal Trade Commission ("FTC") Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

8.      Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who have purchased one or more of Defendants' Factory items advertised at a purported discount from a fictitious higher reference price from Banana Republic Factory stores and bananarepublicfactory.gapfactory.com. Plaintiffs intend to halt the dissemination and perpetuation of this false, misleading, and deceptive pricing scheme, to correct the false and harmful perception it has created in the minds of consumers, and to obtain redress for those who overpaid for merchandise tainted by this deceptive pricing scheme. Plaintiffs also seek to permanently enjoin Defendants from engaging in this unlawful conduct. Further, Plaintiffs seek to obtain all applicable damages, including actual, compensatory, benefit of the bargain, statutory, and punitive; equitable restitution; reasonable costs and attorneys' fees; and other appropriate

relief in the amount by which Defendants were unjustly enriched as a result of their sales of merchandise offered a false discount.

## II.    JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

9.      This Court has original jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and Plaintiffs, and at least some members of the proposed Class have a different state citizenship from Defendants.

10.     The Northern District of California has personal jurisdiction over Defendants because Defendants conduct business in the State of California and have principal executive offices located in California. Defendants conduct business with sufficient minimum contacts within California, or otherwise intentionally avail themselves to the California market through the operation of their Banana Republic Factory outlet stores within the State of California.

11.     Venue is proper under 28 U.S.C. § 1391(b)(1) & (2) because Defendants' principal place of business is within this District and because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated, within this District.

12.     Pursuant to Civil Local Rules 3-2(c) and 3-5(b), divisional assignment is proper in the San Francisco or Oakland Division because a substantial part of the events giving rise to the claims occurred in the counties of San Francisco and Alameda.

## III.    GENERAL ALLEGATIONS

### A.    Retailers Benefit from False Reference Pricing Schemes.

13.     Defendants engage in a false and misleading reference price scheme in the marketing and selling of their Banana Republic Factory merchandise at their Banana Republic Factory stores and e-commerce website, bananarepublicfactory.gapfactory.com.

14.     Retailers like Defendants can and do benefit substantially from false discounting schemes because "framing a price increase as a discount can not only allow the firm to get ***higher margins***, but also ***increase sales***." Staelin et al., *supra*, at 835 (emphasis added). This is because consumers use advertised reference prices to make purchase decisions, particularly when the

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

information available to consumers can vary among different types of products.[4] Most often, as with retail clothing, consumers lack full information about the products and, as a result, often use information from sellers to make purchase decisions.[5]

15.    Defendants' deceptive advertised reference prices are thus incorporated into consumers' decision process. First, a product's "price is also used as an indicator of product quality."[6] In other words, consumers view Defendants' deceptive advertised reference prices as a proxy for product quality. Second, reference prices "appeal[] to consumers' desire for bargains or deals."[7] Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[8] Under this concept, coined as "transaction utility" by Nobel Prize-winning economist Richard Thaler, consumers place value on the psychological experience of obtaining a product at a perceived bargain.[9]

---

[4] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (e.g., style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (e.g., longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (e.g., whether the shirt's cotton was produced using organic farming methods). Michael R. Darby & Edi Karni. *Free Competition and the Optimal Amount of Fraud*, 16 J. Law & Econ. 67, 68-69 (1973).

[5] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Phillip Nelson. *Information and Consumer Behavior*. 78 J. Pol. Econ. 311, 311-12 (1970).

[6] Grewal & Compeau, *Comparative Price Advertising*, *supra* n.1, at 54; *see also* Richard Thaler. *Mental Accounting and Consumer Choice*, 4 Mktg. Sci. 199, 212 (1985) [hereinafter Thaler, *Mental Accounting and Consumer Choice*] ("The [reference price] will be more successful as a reference price the less often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[7] Grewal & Compeau, *Comparative Price Advertising*, *supra* n.1, at 52.

[8] Peter Darke & Darren Dahl. *Fairness and Discounts: The Subjective Value of a Bargain*, 13 J. of Consumer Psych. 328, 328 (2003).

[9] "To incorporate . . . the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal.'" Richard Thaler. *Mental Accounting and Consumer Choice*, *supra* n.6, at 205.

6

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

16.     Research in marketing and economics has long recognized that consumer demand can be influenced by "internal" and "external" reference prices.[10] Internal reference prices are "prices stored in memory" (e.g., a consumer's price expectations adapted from past experience) while external reference prices are "provided by observed stimuli in the purchase environment" (e.g., a "suggested retail price," or other comparative sale price).[11] Researchers report that consumers' internal reference prices adjust toward external reference prices when valuing a product.[12] For infrequently purchased products, external reference prices can be particularly influential because these consumers have little or no prior internal reference.[13] In other words, "[t]he deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or knowledge of the product and product category."[14] Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[15] and publications have summarized the empirical data as follows:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or

[10] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Glenn E. Mayhew & Russell S. Winer. *An Empirical Analysis of Internal and External Reference Prices using Scanner Data*, 19 J. of Consumer Rsch. 62, 68 (1992) [hereinafter Mayhew & Winer, *An Empirical Analysis*].

[11] Mayhew & Winer, *An Empirical Analysis*, *supra* n.10, at 62.

[12] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the deal." Dhruv Grewal et al., *The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions.* 62 J. of Mktg. 46, 48 (1998) [hereinafter Grewal et al., *The Effects of Price-Comparison Advertising*].

[13] As Thaler notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Richard Thaler, *Mental Accounting*, *supra* n.6, at 212.

[14] Dhruv Grewal & Larry D. Compeau. *Pricing and Public Policy: A research agenda and an overview of the special issue*, 18 J. Pub. Pol'y & Mktg. 3, 7 (1999) [hereinafter Grewal & Compeau, *Pricing and Public Policy*].

[15] Gurumurthy Kalvanaram & Russell S. Winer. *Empirical Generalizations from Reference Price Research.* 14 Mktg. Sci. 161, 161 (1995); *see also* Jerry B. Gotlieb & Cyndy Thomas Fitzgerald. *An Investigation into the Effects of Advertised Reference Prices on the Price Consumers are Willing to Pay for the Product.* 6 J. of Applied Bus. Rsch. 59, 65-66 (1990) [hereinafter Gotlieb & Fitzgerald, *An Investigation*] ("The results of this research provide support for the position that [external] reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product.").

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][16]

17.     In Staelin, *Regulation of Fictitious Pricing*, published just last year, authors Richard Staelin, a Duke marketing professor since 1982, Joel Urbany, a Notre Dame marketing professor since 1999, and Donald Ngwe, a senior principal economist for Microsoft and former marketing professor for Harvard, built on their prior analytic work to explain the effects of false reference pricing schemes and why their use has not dissipated as previously expected by the FTC, but rather have become more prevalent in the absence of FTC regulation. Importantly, this new study cites and confirms many of the same older consumer studies cited above[17] and notes that the findings of these "older" studies are still widely accepted relevant principles in the economic discipline. *See id.*

18.     Additionally, Staelin, *Regulation of Fictitious Pricing*, explains how the modern development of consumer search behavior and options available to consumers (e.g., smartphones, online shopping) has actually *spread* the presence of fictitious reference pricing, not extinguished it.[18] According to Staelin and his co-authors, "disclosure of the true normal price charged may be the only solution that could plausibly influence both consumer and firm behavior." *Id.* at 826. *See also id.* at 831 ("Identical firms, selling identical products, make positive profits because of their obfuscation strategy, and the likelihood of obfuscation grows as competition intensifies.").

19.     Consequently, retailers like Defendants, who understand that consumers are susceptible to a bargain, have a substantial financial interest in making consumers think they *are* getting a bargain, even when they are not. Contrary to the illusory bargains in Defendants' advertisements, consumers are not receiving *any* discount and are actually *overpaying* for Defendants' product because, as Staelin *et al.* put it, "[t]he magnitude of both real and fake discount[s] were significant predictors of demand above the effects of the actual sales price, ***with***

[16] Grewal & Compeau, *Pricing and Public Policy*, *supra* n.14, at 7.

[17] *See* Staelin et al.*, supra* at 826 ("It is now well accepted that many consumers get extra utility, beyond that associated with consuming a product from purchasing it on deal [] and that magnitude of this utility is a function of the size of the deal.") (emphasis added).

[18] Staelin *et al.*, *supra* at 826 (explaining how the study "develop(s) a descriptive model explaining why fictitious reference pricing has spread instead of being extinguished by competition.").

*fake discounts having a substantially larger effect than real discounts*." *Id.* at 835 (emphasis added).

**B.    Defendants Engage in a Fraudulent Price Discounting Scheme.**

20.    Defendants are a specialty retailer of men's, women's, and children's apparel. For years, Defendants have engaged in a fake discounting scheme that harms consumers by advertising their Banana Republic Factory merchandise at discounted "sale" prices in their Banana Republic Factory stores and bananarepublicfactory.gapfactory.com. In short, Defendants market the "sale" prices as discounts from the "original" prices listed on the products' price tags for merchandise sold at Defendants' brick-and-mortar Banana Republic Factory stores. In most cases, the items are each accompanied by a placard sign immediately above them[19] advertising a "__% Off [the] LOWEST TICKETED PRICE." In other instances, the sale placards advertise a whole-price discount that is usually substantially less than the "original" price tag price. The discount placard signs are printed on white card stock with bold, black lettering advertising the fake discount. Defendants do *not* advertise or otherwise disclose the date on which any item was last offered for its "original" price.

21.    The photos below demonstrate Banana Republic Factory's uniform storewide practice in place at all Banana Republic Factory stores. [20]



---

[19] In other cases, such as with table displays, the discount sign applies to several, typically similar, items.
[20] *See* **Exhibit A**, additional Banana Republic Factory in-store photographs depicting the extent and pervasiveness of Defendants' discounting scheme.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13



14    22.    As shown in the above photos—and throughout **Exhibit A**—Defendants'

15 "original" (or "ticket") prices are unaccompanied by any qualifying language that could arguably

16 direct consumers to compare Defendants' reference price and purported discount to any other

17 market outside of the particular factory store where it is being advertised. This reasonable

18 impression is reinforced by Defendants' pervasive use of "__% OFF" advertisements, which

19 denote limited-time discounts from *former* prices.[21] Thus, Defendants do not advertise any

20 "discounts" from any other stores, including their own mainline Banana Republic stores.

21    23.    Additionally, Plaintiffs are informed and believe and thereon allege that all of the

22 merchandise sold at Banana Republic Factory stores is manufactured for and sold exclusively at

23 Banana Republic Factory stores.[22]

24

25 [21] *See Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 725 (N.D. Cal. 2024) ("A reasonable
consumer does not need language such as, 'Formerly $9.99, Now 40% Off $9.99,' or '40% Off
26 the Former Price of $9.99,' to reasonably understand '40% off' to mean 40% off the former price
of the product.") (quoting *Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995,
27 at *4 (N.D. Cal. June 15, 2016)).

28 [22] *See* Megan Kristel, *What to Buy at Banana Republic Factory*, The Well Dressed Life (Feb. 7,
2023),    https://thewelldressedlife.com/what-to-buy-at-banana-republic-factory/    ("And    their

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

24.    Moreover, Defendants' reference prices are not styled as "Compare At" pricing representations. In those schemes an advertiser compares its prices to those of competitors using words such as "compare at" or "comparable value" on its price tags to qualify its reference prices. Accordingly, Plaintiffs are *not* required to "'assert evidence from which a rational trier of fact could infer that the **comparative** reference price was inaccurate[,]'" *Harris v. PFI W. Stores Inc.*, No. SACV192521JVSADSX, 2020 WL 3965022, at *4 (C.D. Cal. Apr. 9, 2020) (citing *Sperling*, 291 F. Supp. 3d at 1085-86) (emphasis added), because, "th[at] situation **only arises when the language of the advertisement implies a comparison to another retailer**. *Id.* (citing *Horosny v. Burlington Coat Factory of California, LLC*, No. CV1505005SJOMRWX, 2015 WL 12532178, at *6 (C.D. Cal. Oct. 26, 2015) (emphasis added). Both Defendants' exclusive and any non-exclusive Factory store items bear ticket prices unaccompanied by any qualifying language that would reasonably indicate a comparison to another market, and so consumers are not put on notice to seek out those comparisons. Thus, it is irrelevant to Defendants' liability whether the outlet items are sold in other markets, such as department stores (they are not).

25.    With respect to Defendants' factory sales at bananarepublicfactory.com, Defendants engage in the online equivalent of its brick-and-mortar practice.[23] That is, Defendants perpetually advertise Banana Republic Factory merchandise with an "original" price (black font) with a strikethrough on it (i.e., crossed out: e.g., ~~$35.00~~) next to a corresponding "Now" price (e.g., "Now $17.50"), which represents a whole-price "discount" from the struck-through (fictitious) "original" price. The "Now" price appears in the same thin black font as the "original" price. Like

---

[Banana Republic's] Factory store is NOT an outlet. Just like J.Crew Factory, the clothing is specifically designed and manufactured for the store."); *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018) ("In exclusive product cases, a store, often an outlet store, sells a lower-price, different version of a product sold in a traditional retail store. The outlet uses the price of the product made for the retail store as a comparative reference price on price tags. However, the actual product being sold in the outlet is made exclusively for the outlet and is never sold for the comparative reference price at a traditional retail store. In those cases, courts generally find that a plaintiff can proceed with his or her claims."); *see, e.g., Rubenstein v. Neiman Marcus Grp. LLC*, 687 F.App'x 564, 567 (9th Cir. 2017); *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2017 WL 1957063, at *8 (N.D. Cal. May 11, 2017); *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA, 2015 WL 10436858, at *7–8 (S.D. Cal. Oct. 9, 2015).

[23] As discussed below in Section VI.D, Plaintiffs' counsel confirmed that the outlet products sold at bananarepublicfactory.gapfactory.com are the same as those available in-store.

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

1  Defendants' in-store Banana Republic Factory products, the false references prices advertised at

2  bananarepublicfactory.com operate as a baseline for consumers to rely on to assess a product's

3  value. Defendants' characterization of the actual sales price as the "Now" price alongside the

4  "original" price communicates to consumers that the product is being offered at a substantial

5  discount from a former price for a limited time and will return to that price if the shopper fails to

6  act. The photos below illustrate this practice, which is uniform across the e-commerce website,

7  and appears on both list and product pages.[24]



24 The product pages also include a "__% Off" descriptor to the right of the struck-through
"original" price and immediately above the "discounted" sales price. Attached hereto as **Exhibit B**
are numerous snapshots from bananarepublicfactory.com showing an assortment of merchandise
items advertised with false discounts. Attached as **Exhibit C** are numerous snapshots of the
website acquired from the Wayback Machine. Wayback Machine (accessible at https://wayback-
api.archive.org/) is a well-regarded internet archive of websites and webpages as they existed at
one point in time. In other words, while a website may update its content periodically, WBM
permits users to view it exactly as it appears on the date the page snapshot is taken. The date of
the snapshot is shown at the top of each page. **Exhibit C** therefore offers further evidence of the
perpetual nature of Defendants' false discounting scheme employed at bananafactoryrepublic.com.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT



26.    The    Banana    Republic    Factory    products    sold    in-store    and    at bananarepublicfactory.com are the same. There is also no meaningful difference from Defendants' Banana Republic Factory inventory—the same products are sold at every store and online and the same fraudulent pricing scheme is deployed uniformly. Both channels consist of exclusive, made-for-outlet products not sold in Banana Republic mainline stores or department stores.

27.    Thus, Defendants are not offering a "discount" from their own or any competitor's merchandise for sale in the relevant market (or *any* market). Further, because Factory products sold    in    both    the    brick-and-mortar    Banana    Republic    Factory    stores    and bananarepublicfactory.gapfactory.com are never—or virtually never—offered for sale or actually sold at their "original" or "price tag" prices, those prices and their accompanying "discounts" are fraudulent: they are used solely to induce consumers to make purchases and spend more under the reasonable, but incorrect, belief that the merchandise was once sold at its advertised reference price in either (1) the brick-and-mortar Banana Republic Factory store, (2) bananarepublicfactory.com, or (2) the Banana Republic mainline store (which sells higher quality Banana Republic-branded merchandise) at a significant discount when, in fact, they are purchasing inferior quality, ***made-for-factory-outlet***, merchandise that has never been offered outside of a Banana Republic Factory store and, even there, never (or virtually never) at the higher "original" price advertised on its price tag.

28.    Even if Defendants did offer the Factory products at their full reference price (which they do not), that offering would do little to legitimize Defendants' practice. This is because, for the advertised former price to be "actual, bona fide" and "legitimate" it must be the "price at which the article was offered to the public *on a regular basis for a reasonably substantial period of time*." 16 C.F.R. § 233.1(a) (emphasis added). Nor would such rare offerings constitute the "prevailing market price" within the "three months next immediately preceding the publication of the advertisement," as is required by the FAL, Cal. Bus. & Prof. Code § 17501, "unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement[,]" which Defendants also fail to do on *all* advertisements. Rather, the advertised reference prices on Banana Republic Factory merchandise are *not* the price at which Defendants regularly (or ever) sell, or expect to regularly sell, the merchandise; they are merely a basis for misleading consumers into believing they are receiving a substantial discount.

29.    In sum, Defendants' fake discount scheme is intended to (and does) increase Defendants' sales while depriving consumers of the benefit of their bargain and causing them to spend more money than the Factory Store items are actually worth—the price they could command in the absence of the fake discount.[25] This conduct deprives consumers of a fair opportunity to fully evaluate the offers and to make purchase decisions based on accurate information and results in the illegal imposition of a price premium the Factory store merchandise could not and would not otherwise command, which consumers, like Plaintiffs, are duped into paying.

**C.    Defendants' Fraudulent Price Discounting Scheme Harms All Consumers.**

30.    A product's reference price matters because it serves as a baseline upon which consumers perceive its value.[26] Empirical studies "suggest that consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[27] Consumers are misled and incorrectly overvalue Defendants' Banana Republic

---

[25] *See* Staelin et al., *supra* n.17, at 826.

[26] Thaler, *Mental Accounting and Consumer Choice*, *supra* n.6, at 212.

[27] Gotlieb & Fitzgerald, *An Investigation*, *supra* n.15, at 66. Moreover, "if a higher reference price encourages consumers to pay a higher price for a product than the consumer was willing to pay

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Factory products as a result of the false price comparisons. The products' actual sales prices, therefore, reflect consumers' overvaluation of them, which, in turn, permits Defendants to command inflated prices for them beyond what the market would otherwise allow. As discussed above, academic researchers have documented the relationship between reference prices and consumer behavior, as well as the resulting harm from *false* reference prices:

> [A]dvertised reference prices in these deal-oriented advertisements can enhance buyers' internal reference prices . . . . These enhanced internal reference prices, when compared with the lower selling price, result in higher transaction value perceptions. The increase in perceived transaction value enhances purchases and reduces search behavior for lower prices. If sellers intentionally increase the advertised reference prices above normal retail prices, this is, inflate advertised reference prices, the resulting inflated perceptions of transaction value would be deceptive. Harm to both buyers and competitors could result from the effect of the inflated transaction value on buyers' search and purchase behaviors.[28]

31.    Accordingly, all consumers who purchase Banana Republic Factory merchandise are harmed by Defendants' pricing scheme because its impact pervades the entire market for Banana Republic Factory merchandise. This is because, again, the artificially increased demand generated by Defendants' pricing scheme results in increased actual sales prices beyond what the products would command in the absence of the false reference pricing scheme. Again, "the higher reference price stated alongside the selling price shift[s] the demand function outward, leading to higher average prices and thus higher margins." Staelin *et al*., *supra*, at 835. Thus, all Banana Republic Factory shoppers pay more regardless of their individual beliefs or purchasing decision processes. In other words, their subjective beliefs about the value of the products or the legitimacy of the purported discounts are inconsequential to the injury they incur when purchasing Defendants' Banana Republic Factory merchandise. All consumers who purchase falsely discounted Banana Republic Factory products have overpaid and are deprived of the benefit of the bargain (i.e., the promised discount). Additionally, they will have paid a premium for merchandise that is worth less than its actual sales price.

---

for the identical product with a lower reference price, then the practice of using high reference prices would be deceptive." *Id*. at 60.

[28] Dhruv Grewal et al., *The Effects of Price-Comparison Advertising*, *supra* n.12, at 46.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

32.    To put it differently, the fake discount information presented by Defendants' falsely advertised reference and sale prices first causes consumers to (reasonably) perceive they are receiving a bargain when the merchandise is purchased at its "sale" price. This consumer perception results in these consumers gaining an additional "transaction value"[29] on their outlet purchases, which they would not have otherwise gained but for Defendants' fake discounting scheme. Consumers' valuation of Banana Republic Factory merchandise therefore increases in the aggregate.

33.    Fundamental economics concepts and principles dictate that the harm caused by Defendants' scheme is uniformly suffered by deceived and, to the extent there are any, non-deceived Banana Republic Factory shoppers alike. One such principle is that cost and demand conditions determine the market prices paid by all consumers.[30] The aggregate demand curve for a product, including Defendants', represents consumers' valuation of that product as whole; as consumers' valuation increases, the demand curve shifts outward. When the aggregate demand curve of a product shifts outward, its market price will increase. Therefore, a specific individual's willingness to pay a certain price for a product will not negate how market prices, as determined by aggregate demand, dictate what all consumers purchasing a given product will pay.

34.    As a result, Defendants' pricing scheme impacts the market prices of their Banana Republic Factory products, and any one individual consumer's subjective beliefs or idiosyncratic rationales will not isolate them from the resultant artificial and illegitimate inflation in Banana Republic Factory prices. Economic theory ensures that as the aggregate demand curve for the products moves outward, all consumers are forced to pay a higher price than the products would

---

[29] Thaler, *Mental Accounting and Consumer Choice*, *supra* n.6, at 205 ("To incorporate … the psychology of buying into the model, two kinds of utility are postulated: acquisition utility and transaction utility. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal.'"); Grewal & Compeau, *Comparative Price Advertising*, *supra* n.1, at 55 ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); Grewal & Compeau, *Pricing and public policy*, *supra* n.14, at 7.

[30] Mankiw, N. *Essentials of Economics*, 8th Edition. Boston, MA: Cengage Learning, 66 (2015) ("[P]rice and quantity are determined by all buyers and sellers as they interact in the marketplace"); *see also* Hal R. Varian, *Microeconomics Analysis.* 3rd Edition. New York, NY: W. W. Norton & Company, at 23-38, 144-57, 233-353 & 285-312 (1992).

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

command absent the fake discounting scheme. Plaintiffs and proposed Class (defined below) members thus suffered a common impact from Defendants' misconduct.

**D.    Investigation**

35.    Plaintiffs' counsel has conducted a large-scale, comprehensive investigation into Defendants' fake discounting scheme at their Banana Republic Factory stores and online at bananarepublicfactory.com. Plaintiffs' counsel has tracked items in Defendants' Banana Republic Factory stores across California from July 18, 2022, and continuing often on a daily or near-daily basis until September 23, 2022. Plaintiffs' counsel made additional visits in March 2023 to confirm that Defendants' Banana Republic Factory items remained falsely discounted under the same pricing scheme, and confirmed that they did. Plaintiffs' counsel also began investigation in Oregon in September 2023, which is currently ongoing. Plaintiffs' counsel has also monitored Defendants' pricing in New York. Notably, at all times (2022, 2023, and 2024), all products observed remained "discounted" under the same uniform pricing scheme at all locations regardless of the state and year. Attached as **Exhibit D** to this complaint is a list of exemplary products tracked in California.

36.    Notably, at all times observations were made (2022, 2023, and 2024), and at all locations (California, Oregon, New York), Defendants' Factory pricing scheme (i.e., the manner in which the reference prices and purported discounts are conveyed to shoppers) has been uniform,[31] and all products observed remained perpetually "discounted." The only thing that changed was the advertised discount and/or reference price on certain merchandise. In other words, all items had price tags that were constantly "discounted" by in-store signage indicating a substantial percent off ("__% Off") or whole-price reduction discount. Accordingly, Plaintiffs are informed and believe and thereon allege that Banana Republic Factory store merchandise is never offered for sale at its full "original" price—and certainly not "on a regular basis for a reasonably substantial period of time," as required by 16 C.F.R. § 233.1.

37.    Thus, the investigation confirms that the "original" or "price tag" reference price of the item Plaintiffs purchased was never the actual selling price of that item because it was never

---

[31] That is, the fake discounting scheme described above in Section III.B. has appeared uniformly implemented at each location. *See* **Exhibit A**.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

offered at that price, but rather continuously offered for sale at fake discount prices. The investigation confirmed that this was a pervasive, uniform, and systematic practice at the Defendants' Banana Republic Factory stores, as thousands of items remained continuously discounted throughout the investigation period, including those products purchased by Plaintiffs.[32] Indeed, the investigation indicated that Banana Republic Factory merchandise is never offered for sale at its full "original" price—and certainly are not "on a regular basis for a reasonably substantial period of time," as required by 16 C.F.R. § 233.1.

38.    Plaintiffs' counsel has also monitored Banana Republic Factory merchandise sold online at bananarepublicfactory.gapfactory.com during 2024. Bananarepublicfactory.gapfactory.com sells the same Banana Republic Factory merchandise as the brick-and-mortar outlet stores in California. Plaintiffs' counsel found that the merchandise for sale on bananarepublicfactory.gapfactory.com was

[32] Numerous false discount pricing cases brought in California federal district courts have held that, notwithstanding [FRCP] Rule 9(b), that plaintiffs are ***not*** required to perform or provide ***any*** specific details pertaining of pre-lawsuit investigations into false discounting practices in order to defeat a motion to dismiss. *See, e.g.*, *Rubenstein*, 687 F.App'x at 568 ("Without an opportunity to conduct any discovery, Rubenstein cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies or procedures for its Last Call stores. Because Rubenstein need not specifically plead facts to which she cannot 'reasonably be expected to have access,' her allegations regarding the fictitious nature of the Compared To prices may properly be based on personal information and belief at this stage of the litigation."); *Stathakos*, 2016 WL 1730001, at *3–4 (complaint lacking in any allegations related to pre-suit investigation of false discounting practice satisfied Rule 9(b)); *Knapp*, 2016 WL 3268995, at *4 (allegations of "perpetual sale" were alone sufficient); *Horosny*, 2015 WL 12532178, at *4 (denying motion to dismiss where plaintiff pled existence of deceptive pricing scheme "on information and belief" only, without investigation); *see also Le v. Kohls Dept. Stores, Inc.*, 160 F.Supp.3d 1096, 1099 (E.D. Wis. Feb. 8, 2016) (denying a motion to dismiss where the plaintiff had not conducted a nationwide pre-suit investigation before alleging the defendant's comparison prices did not reflect a price at which its merchandise was routinely sold). Still, complaints containing pre-suit investigation allegations similar to Plaintiffs' here have routinely been sustained over motion to dismiss challenges, in California federal courts as well as state courts which notably *do not* apply Federal Rule 9(b)'s heightened pleading standard for actions sounding in fraud. *See, e.g.*, *Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH-DFMx, 2021 WL 4907248 (C.D. Cal. Mar. 1, 2021); *Dahlin v. Under Armour, Inc.*, No. CV 20-3706 PA (JEMx), 2020 WL 6647733 (C.D. Cal. July 31, 2020); *Inga*, 2020 WL 5769080, at *1; *Harris v. PFI W. Stores, Inc.*, No. SACV 19-2521 JVS (ADSx), 2020 WL 3965022, at *1 (C.D. Cal. Apr. 9, 2020); *Calderon v. Kate Spade & Co., LLC*, No. 3:19-CV-00674-AJB-JLB, 2020 WL 1062930 (S.D. Cal. Mar. 5, 2020); *Fisher v. Eddie Bauer LLC*, No. 19-cv-857 JM (WVG) 2020 WL 4218228 (S.D. Cal. Feb. 3, 2020); *Dennis v. Ralph Lauren Corp.*, No. 16-cv-1056-WQH-BGS, 2017 WL 3732103 (S.D. Cal. Aug. 29, 2017); *Rael v. New York & Co., Inc.*, No. 16-CV-369-BAS (JMA), 2017 WL 3021019 (S.D. Cal. July 17, 2017); *Azimpour v. Sears, et al.*, No. 15-CV-2798 JLS (WVG), 2017 WL 1496255 (S.D. Cal. Apr. 26, 2017); *Fallenstein v. PVH Corp., et al.*, No. 21-CV-01690-AJB-AGS (S.D. Cal. Jan. 3, 2023) at Dkt. No. 29 (Order Denying Defendants' Motion to Dismiss Plaintiff's First Amended Complaint); *Schertzer v. Alpargatas USA Inc* (Super. Ct. San Diego, 37-2019- 00015352, Dkt. No 45).

subject to the same perpetual false discounting scheme. Indeed, everything offered on bananarepublicfactory.gapfactory.com appears to be always, if not virtually always, advertised at discounts from higher reference prices. This confirmed allegations in Section III.B. above—that items for sale on bananarepublicfactory.gapfactory.com are perpetually and uniformly priced with substantially "discounted" sale prices appearing next to both the "crossed out" (or "strikethrough") "original" price, next to the lower "Now" price and the purported discount "__% Off" (on the product pages).

39.     Plaintiffs' counsel also researched bananarepublicfactory.gapfactory.com with the Wayback Machine. The website snapshots recorded by the Wayback Machine are consistent with the investigation. *See* **Exhibit C**. The website snapshots recorded by the Wayback Machine showed discounted prices on bananarepublicfactory.com merchandise across several months before Plaintiffs' purchases, therefore supporting the allegations of perpetual fake discounts across the e-commerce platform, in addition to the brick-and-mortar Factory stores.

40.     Thus, the false discounting scheme used by Defendants on their Banana Republic Factory merchandise is uniformly and identically applied on all, or virtually all, of the Banana Republic Factory products sold through Defendants' California brick-and-mortar outlet stores and e-commerce website, bananarepublicfactory.gapfactory.com.

41.     Despite Plaintiffs' counsel's best efforts at investigation, the full extent of Defendants' false and deceptive pricing scheme can only be revealed through a full examination of records exclusively in Defendants' possession.

### IV.    PARTIES

**Plaintiffs**

42.     Plaintiff Natasha French resides in Tracy, California. On August 28, 2022, Plaintiff French went shopping for some new clothing at the Banana Republic Factory store in Livermore, California ("SF Premium Outlets"). In reliance on Defendants' false and deceptive advertising, marketing and discount pricing scheme, Plaintiff French purchased a tan trench coat with a reference price of $180.00 that was advertised at a purported 50%-off discount, with an additional discount taken on top of that. Plaintiff French paid an after-tax total of $83.24.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

43.    During her time at the Banana Republic Factory store on August 28, 2022, Plaintiff French browsed several items before deciding on what item to purchase. After reviewing the advertised sale price for the items listed above, Plaintiff French decided to purchase the above listed item. During her time there on August 28, 2022, Plaintiff French noticed numerous signs within the Banana Republic Factory store advertising various "__% Off" discounts on items throughout the store.[33]

44.    Indeed, after observing the original price of the item and the accompanying sale price, Plaintiff French believed she was receiving a significant discount on the item she had chosen. She relied on the purported discount and her belief that the discounted price on the item was for a limited time and would not last was material and integral to her purchase decision. She would not have made the purchase were it not for the significant bargain she thought she was receiving. Plaintiff French paid a total of $83.24. However, Plaintiff French did not receive the benefit of her bargain.

45.    Plaintiff French has therefore suffered economic injury as a direct result of Defendants' unlawful, unfair, and fraudulent false reference pricing scheme.

46.    Plaintiff Chang Cho resides in Mountain View, California. On May 25, 2024, Plaintiff Cho went shopping for some new clothing at the Banana Republic Factory store in Milpitas, California ("Milpitas Outlets"). In reliance on Defendants' false and deceptive advertising, marketing and discount pricing scheme, Plaintiff Cho purchased the following items from the Milpitas Outlets on May 25, 2024:

| No. | Item: | False Reference Price | Purported Discount | Purchase Price |
|---|---|---|---|---|
| 1 | Washwell Trave (SKU 599227-031-3230) | $95.00 | 50% Off | $47.50 |
| 2 | Tailored Fit S (SKU 432435-001-4201) | $300.00 | 50% Off | $150.00 |
| 3 | SL Silky Twill (SKU 452020-001-0010) | $140.00 | 50% Off | $70.00 |

---

[33] *See, e.g.*, **Exhibit A**, depicting extent of discount signs on display throughout Defendants' outlet stores.

47.    During his time at the Banana Republic Factory store on May 25, 2024, Plaintiff Cho browsed several items before deciding on what items to purchase. After reviewing the advertised sale prices for the items listed above, Plaintiff Cho decided to purchase the above listed items. During his time there on May 25, 2024, Plaintiff Cho also noticed numerous signs within the Banana Republic Factory store advertising various "__% Off" discounts on items throughout the store.

48.    Indeed, after observing the original prices of the items and the accompanying sale price, Plaintiff Cho believed he was receiving a significant discount on the items he had chosen. He relied on the purported discount and his belief that the discounted price on the items was for a limited time and would not last was material and integral to his purchase decision. He would not have made the purchases were it not for the significant bargain she thought she was receiving. Plaintiff Cho paid an after-tax total of $292.58.  However, Plaintiff Cho did not receive the benefit of his bargain. A copy of Plaintiff Cho's receipt is attached hereto as **Exhibit E**.

49.    Plaintiff Cho has therefore suffered economic injury as a direct result of Defendants' unlawful, unfair, and fraudulent false reference pricing scheme.

50.    Indeed, Plaintiffs' economic injury resulting from Defendants' misconduct is reliably quantifiable. Plaintiffs overpaid for each item purchased as described herein. And it was Defendants' false reference pricing scheme and attendant deception that caused Plaintiffs to overpay. Despite Plaintiffs' original beliefs that each item was discounted and thus that its value was significantly greater than the sale price paid for it, Plaintiffs, in actuality, paid an *inflated* price for each item.

51.    That is, the items Plaintiffs purchased were each worth less than the amount Plaintiffs paid for them and if Defendants had not employed the falsely advertised "original" prices for the items, then they would not have commanded such a high, inflated price. The price premium Plaintiffs paid—i.e., the difference between the amount Plaintiffs paid and the value received, or the but-for price the product would have commanded absent the false discounting scheme, can be isolated through multiple expert-based models, including hedonic regression, conjoint analysis, and market simulation, which Plaintiffs will further describe in their motion to certify this action as a class action pursuant to Fed. R. Civ. P. 23.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

52.    Plaintiffs are also susceptible to harm reoccurring, and therefore require an injunction, because they cannot be certain that Defendants will have corrected this deceptive pricing scheme, and they desire to shop at Defendants' Banana Republic Factory stores in the future because they like the brand and the clothing styles offered. Due to the enormous, fluctuating variety of styles and sizes of merchandise offered at Banana Republic Factory stores, Plaintiffs will be unable to parse what prices are inflated and untrue, and what prices are not. Plaintiffs simply do not have the resources to ensure that Defendants are complying with California and federal law with respect to their pricing, labeling, and/or advertising of their outlet merchandise.

53.    Further, because of the wide selection of merchandise available at Defendants' outlet stores, the sheer volume of Banana Republic Factory products involved in Defendants' deceit (i.e., virtually all of them), and the likelihood that Defendants may yet develop and market additional Banana Republic Factory merchandise items for sale, Plaintiffs may again, by mistake, purchase a falsely discounted product at one of the Banana Republic Factory stores under the reasonable, but false, impression that Defendants had corrected the scheme and that their reference price advertisement represented a *bona fide* former price at which the item was previously offered for sale by Defendants. However, without a substantial, time-consuming, and costly investigation, Plaintiffs will have no way of knowing whether Defendants have deceived them again.

54.    Absent an equitable injunction enjoining Defendants from continuing in the unlawful course of conduct alleged herein, Plaintiffs, members of the Class, and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendants' ongoing and deceptive conduct that cannot be remedied with monetary damages. Accordingly, Plaintiffs, members of the Class, and the general public lack an adequate remedy at law and an injunction is the only form of relief which will guarantee Plaintiffs and other California consumers the appropriate assurances.

**Defendants**

55.    Defendant Banana Republic LLC is a for-profit limited liability company formed and existing under the laws of the State of California with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

56.     Defendant Banana Republic (Apparel) LLC is a for-profit limited liability company formed and existing under the laws of the State of California with its principal place of business at 2 Folsom Street, 13th Floor, San Francisco, California 94105, and thus is a citizen of California.

57.     Plaintiffs do not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sue such defendants by such fictitious names. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiffs and members of the proposed Class as alleged herein. Plaintiffs will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

58.     Defendants know that their reference price advertising is false, deceptive, misleading, unconscionable, and unlawful under California and federal law.

59.     Defendants fraudulently concealed from and intentionally failed to disclose to Plaintiffs and other members of the proposed Class the truth about their advertised discount prices and former reference prices. Defendants concealed from consumers the true nature and quality of the products sold at their Banana Republic Factory stores.

60.     Defendants intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiffs and the proposed Class to purchase Banana Republic Factory products.

61.     At all relevant times, Defendants have been under a duty to Plaintiffs and the Class to disclose the truth about their false discounts.

## V.     CLASS ALLEGATIONS

62.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class against Defendants:

> All persons who are residents of the State of California and within the applicable statute of limitations preceding the filing of this action (the "Class Period"), purchased from a Banana Republic Factory store located in California or from bananarepublic.com or bananarepublic.gapfactory.com one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Excluded from the Class are Defendants, as well as their officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more classes, in connection with their motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

63.     ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendants' conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs.

64.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

      a.     whether, during the Class Period, Defendants used falsely advertised reference prices on their Banana Republic Factory product labels and falsely advertised price discounts on merchandise sold in their outlet stores;

      b.     whether Defendants ever offered items for sale or sold items at their advertised reference price;

      c.     whether, during the Class Period, the original price advertised by Defendants was the prevailing market price for the products in question during the three months preceding the dissemination and/or publication of the advertised former prices;

      d.     whether Defendants' purported sale prices advertised in their Banana Republic Factory stores reflected any actual discounts or savings;

      e.     whether Defendants' purported percentage-off discounts advertised in their Banana Republic Factory stores reflected any actual discounts or savings;

      f.     whether Defendants' alleged conduct constitutes violations of the laws asserted;

g.      whether Defendants' alleged conduct constitutes violations of federal and/or California pricing regulations;

h.      whether Defendants engaged in an unconscionable commercial practice, and/or employed deception or misrepresentation under the laws asserted;

i.      whether Plaintiffs and Class members are entitled to damages and the proper measure of that loss; and

j.      whether an injunction is necessary to prevent Defendants from continuing to use false, misleading or illegal price comparisons.

65.    *Typicality*: Plaintiffs' claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive price advertising scheme, as alleged herein. Plaintiffs are advancing the same claims and legal theories on behalf of herself and all Class members.

66.    *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no antagonistic or adverse interests to those of the Class.

67.    *Superiority*: The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to them and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiffs and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Defendants will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

68.    All Class members, including Plaintiffs, were exposed to one or more of Defendants' misrepresentations or omissions of material fact claiming that former reference prices

advertised prices were legitimate. Due to the scope and extent of Defendants' consistent false sale prices, and advertising scheme, disseminated in a years-long campaign to California consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiffs, affirmatively acted in response to the representations contained in Defendants' false advertising scheme when purchasing merchandise sold at Banana Republic Factory stores.

69.    Plaintiffs are informed that Defendants keep extensive computerized records of their Banana Republic Factory customers through, *inter alia*, customer loyalty programs, credit card programs, and general marketing programs. Defendants have one or more databases through which a significant majority of Class members may be identified and ascertained, and they maintain contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of California's Unfair Competition Law ("UCL")**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***

70.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

71.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants for violations of the UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq*.

72.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

73.    The UCL imposes strict liability. Plaintiffs and members of the proposed Class need not prove that Defendants intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

*"Unfair" Prong*

74.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

75.    Defendants' actions constitute "unfair" business practices because, as alleged above, Defendants engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendants' acts and practices offended an established public policy of transparency in pricing, including regulations enacted by the FTC, and they constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

76.    The harm emanating from this practice to Plaintiffs and members of the proposed Class outweighs any utility it provides because Defendants' practice of advertising false discounts provides no utility. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.

*"Fraudulent" Prong*

77.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

78.    Defendants' acts and practices alleged above constitute fraudulent business acts or practices as Defendants have deceived Plaintiffs and members of the proposed Class and they are highly likely to deceive members of the consuming public. Plaintiffs and members of the proposed Class relied on Defendants' fraudulent and deceptive representations regarding their false or outdated "original prices" for products sold by Defendants at their Banana Republic Factory stores. These misrepresentations played a substantial role in Plaintiffs' and members of the proposed Class's decision to purchase the product at a purportedly steep discount, and Plaintiffs and members of the proposed Class would not have purchased the product without Defendants' misrepresentations.

*"Unlawful" Prong*

79.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

80.    Defendants' acts and practices alleged above constitute unlawful business acts or practices as Defendants have violated state and federal law in connection with their deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, like Defendants', are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious - *for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price

> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $_____"), unless substantial sales at that price were actually made.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

81.    In addition, Defendants' acts and practices violate California law, which expressly prohibits false former pricing schemes. The FAL, Cal. Bus. & Prof. Code § 17501, entitled "*Worth or value; statements as to former price*," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

82.     Defendants violate § 17501 because they advertise items, including the items that Plaintiffs purchased described herein, with a former "original" or "Ticketed Price" that greatly exceeds the prevailing market price of those items. Defendants' own sales records will show that they normally sell their products, including the items purchased by Plaintiffs, at a price lower than the advertised former "original" or "Ticketed Price," thereby establishing that those prices exceed the prevailing market price of Defendants' merchandise in violation of Cal. Bus. & Prof. Code § 17501.

83.     As detailed in the Third Cause of Action below, the CLRA, Cal. Civ. Code § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

84.     As detailed herein, and for the same reason that Defendants' acts and practices violate the FTCA and the FAL, they also violate the CLRA.

85.     Defendants' practices, as set forth above, misled Plaintiffs, the proposed Class, and the public in the past and will continue to mislead them in the future. Consequently, Defendants' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

86.     Defendants' violations of the UCL, through their unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat to Plaintiffs, members of the proposed Class, and the public who, if Defendants' false pricing scheme is permitted to continue, will be deceived into purchasing products based on illegal price comparisons. These false comparisons created phantom markdowns and led to financial harm for consumers like Plaintiffs and the members of the proposed Class as described herein. Because of the surreptitious nature of Defendants' deception, these injuries cannot be reasonably avoided and will continue to be suffered by the consuming public absent a mandated change in Defendants' practice.

87.    Pursuant to Bus. & Prof. Code § 17203, Plaintiffs and members of the proposed Class are entitled to preliminary and permanent injunctive relief enjoining Defendants from continuing to engage in this unfair competition alleged above, as well as disgorgement and restitution to Plaintiffs and the proposed Class of all Defendants' revenues wrongfully obtained from them as a result of Defendants' unfair competition, or such portion of those revenues as the Court may find equitable.[34]

## SECOND CAUSE OF ACTION

### Violation of California's False Advertising Law ("FAL")
### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

88.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

89.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants for violations of California's FAL, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

90.    Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any

---

[34] California permits broad discretion to fashion remedies as needed, and "the appropriate measure of recovery [under the equitable provisions of California's consumer protection laws] depends on the nature of the case and the alleged harm that [a plaintiff] suffers." *Le*, 160 F. Supp. 3d at 1104. "California's consumer protection laws…authorize multiple forms of restitutionary recovery." *Id.* at 1105; *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("[I]n calculating restitution under the UCL and FAL, the focus is on the difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information."); *Jacobo*, 2016 WL 3482041, at *7 ("Remedy for the alleged misconduct is not limited to the difference between the value of the goods [p]laintiffs purchased and the price for those goods.*"); Russell v. Kohl's Dep't Stores, Inc.*, No. ED CV 15-1143 RGK (SPx), 2015 WL 12781206, at *3-4 (C.D. Cal. Oct. 6, 2015) (explaining why cost minus value is not the exclusive method of measuring restitution); *Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO (RNBx), 2015 WL 1526559, at *4 (C.D. Cal. Mar. 23, 2015) ("[A]lthough California case law makes clear that [cost minus value] can be a measure of restitution, defendant has not cited, nor has the court found, any authority indicating that is the only way restitution can be calculated."); *Johns v. Bayer Corp.*, No. 09-cv-1935-AJB (DHB), 2012 WL 1520030, at *5 (S.D. Cal. Apr. 30, 2012) (finding that neither In re Vioxx nor any other case cited by the defendant "suggest[ed] that the difference in price paid and value received is the only proper measure of restitution"); *Stathakos*, 2016 WL 1730001, at *4 (challenge to restitution methodology premature at motion to dismiss stage); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 792 (2015) (explaining that *In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) did not limit measuring restitution to the price/value differential).

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is ***untrue or misleading***, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(emphasis added).

91.    The "intent" required by section 17500 is the intent to make or disseminate personal property (or cause such personal property to be made or disseminated), and not the intent to mislead the public in the making or dissemination of such property.

92.    Similarly, this section provides:

no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement.

Cal Bus. & Prof. Code § 17501.

93.    Defendants' routine of advertising discounted prices from false "reference" prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices (i.e., Defendants' average and/or most common actual sale price), constitutes an unfair, untrue, and misleading practice in violation of the FAL. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold at Defendants' Banana Republic Factory stores were worth more than they actually were.

94.    As a direct and proximate result of Defendants' misleading and false advertisements, as well as Defendants' deceptive and unfair acts and practices made during the course of Defendants' business, Plaintiffs and members of the proposed Class suffered economic injury.

95.    Plaintiffs and members of the proposed Class request that this Court order Defendants to restore this money to Plaintiffs and the proposed Class, and to enjoin Defendants from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiffs,

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

members of the proposed Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**CAL. CIV. CODE § 1750, *et seq.***

96.     Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

97.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendants for violations of the CLRA, Cal. Civ. Code § 1750, *et seq*.

98.     Plaintiffs and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Defendants' sale of products at their Banana Republic Factory stores were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiffs and members of the proposed Class are "goods" or "services" within the meaning of Cal. Civ. Code § 1761(a)-(b).

99.     Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiffs and members of the proposed Class which were intended to result in, and did result in, the sale of products sold at their Banana Republic Factory stores and bananarepublicfactory.gapfactory.com:

        a.     advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

        b.     making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

100.     Plaintiffs are consumers who have suffered economic injury and damages, including benefit of the bargain damages, as a result of Defendants' use and employment of the false and misleading reference pricing alleged herein. Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs therefore seek an order enjoining such methods, acts, or practices as well as any other relief the Court deems proper. Plaintiffs additionally seek costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1780(e).

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

101.    On July 17, 2024, Plaintiffs, through counsel, sent a CLRA demand letter by certified mail to Defendants that provided notice of Defendants' violation of the CLRA and demanded Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, Plaintiffs would file a complaint seeking damages in accordance with the CLRA. To date, Defendants have not rectified their unlawful practices identified in the CLRA demand letter and complained of herein. Thus, Plaintiffs are seeking statutory, punitive, and any damages, as appropriate, against Defendants.

102.    Filed concurrently is a declaration of venue pursuant to Cal. Civ. Code § 1780(d).

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class, requests that this Court award relief against Defendants as follows:

a.    an order certifying the Class and designating Plaintiffs as the Class Representatives and their counsel as Class Counsel;

b.    awarding restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of their unlawful, unfair, and fraudulent business practices described herein;

c.    awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

d.    ordering payment of damages as permitted by law, including actual, compensatory, benefit of the bargain, and/or statutory damages, to the full extent permitted by law;

e.    retaining jurisdiction to monitor Defendants' compliance with permanent injunctive relief;

f.    ordering Defendants to engage in a corrective advertising campaign;

g.    awarding attorneys' fees and costs; and

h.    for such other and further relief as the Court may deem necessary or appropriate.

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

1

## VIII.   DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a jury trial for all claims so triable.

3

Dated: November 20, 2024                          **LYNCH CARPENTER, LLP**

4

By:   */s/ Matthew J. Zevin*

5                                                      Matthew J. Zevin (CA 170736)
                                                       mattz@lcllp.com

6                                                      Todd D. Carpenter (CA 234464)
                                                       todd@lcllp.com

7                                                      Connor J. Porzio (CA 351998)
                                                       connor@lcllp.com

8                                                      1234 Camino Del Mar
                                                       Del Mar, California 92014

9                                                      Telephone:     619.762.1910
                                                       Facsimile:     858.313.1850

10                                                     *Attorneys for Plaintiffs and*
                                                       *Proposed Class Counsel*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT